**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MARY C. DANIEL,                          )        NO. CV 13-448-AS
                                         )
              Plaintiff,                  )
                                         )
        v.                               )        **MEMORANDUM OPINION**
                                         )
CAROLYN W. COLVIN,                       )
Acting Commissioner of the               )
Social Security Administration,          )
                                         )
              Defendant.                  )
                                         )
_____ )

**PROCEEDINGS**

        On March 11, 2013, Plaintiff filed a complaint seeking a review of
the Commissioner's denial of disability benefits.  (Docket Entry No. 3).
On July 18, 2013, Defendant filed an Answer and the Administrative
Record "(A.R.").  (Docket Entry Nos. 11-12).  On August 22, 2013, the
matter was transferred and referred to the current Magistrate Judge
(Docket Entry No. 15).  The parties thereafter consented to proceed
before a United States Magistrate Judge (Docket Entry Nos. 16-17).  On
November 22, 2013, the parties filed a Joint Stipulation ("Joint Stip.")

setting forth their respective positions on Plaintiff's claim. (Docket Entry No. 22). The Court has taken this matter under submission without oral argument. See L.R. 7-15; See "Case Management Order," filed March 20, 2013. (Docket Entry No. 6).

### BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff, a former hotel housekeeping staff supervisor, asserts disability since August 8, 2009, based on alleged physical and mental impairments (A.R. 21).[1] The Administrative Law Judge ("ALJ") examined the record and conducted an administrative hearing on September 29, 2011. (A.R. 32-49). The ALJ heard testimony from Plaintiff (A.R. 35-45), and vocational expert Sandra Fioretti (A.R. 45-48). On November 17, 2011, the ALJ issued a decision finding that Plaintiff's medically determinable impairments - degenerative disc disease of the lumbar spine, obesity, chronic bronchitis, hypertension, and mood disorder with anxiety - did not significantly limit her ability to perform basic work activities. (A.R. 19-20). Accordingly, the ALJ found that Plaintiff did not have a severe impairment or combination of impairments, and thus was not disabled at any time from the alleged disability onset date through the date of the ALJ's decision denying her application for disability benefits. (A.R. 27-28). On February 4, 2013, the Appeals Council denied review (A.R. 1-4).

---

[1]

Plaintiff indicates that her job consisted of the following: "cleaned rooms, answered phones, delivered items to rooms, sent out lost and found, called people back about their lost and found, did scheluing (sic) of how many girls was (sic) needed for the day, called employees to work if they were needed or if they were not needed; had to put up with all of the complaints of employees and quests(sic)." (A.R. 144).

1    Plaintiff contends that the ALJ erred in determining that
2    Plaintiff's mental impairments were nonsevere. (See Joint Stip. at 3-7).

3

4                        **STANDARD OF REVIEW**

5

6    This Court reviews the Administration's decision to determine if:
7    (1) the Administration's findings are supported by substantial evidence;
8    and (2) the Administration used proper legal standards.  42 U.S.C. §
9    405(g); See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir.
10   2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007).
11   "Substantial evidence is more than a scintilla, but less than a
12   preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)
13   (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997).  It is
14   "relevant evidence which a reasonable person might accept as adequate to
15   support a conclusion." Hoppai, 499 F.3d at 1074; Smolen v. Chater, 80
16   F.3d 1273, 1279 (9th Cir. 1996)).  To determine whether substantial
17   evidence supports a finding, "a court must 'consider the record as a
18   whole, weighing both evidence that supports and evidence that detracts
19   from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d
20   1033, 1035 (9th Cir. 1997) (internal citations omitted); see Widmark v.
21   Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(inferences "reasonably
22   drawn from the record" can constitute substantial evidence).

23

24   This Court "may not affirm [the Administration's] decision simply
25   by isolating a specific quantum of supporting evidence, but must also
26   consider evidence that detracts from [the Administration's] conclusion."
27   Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987) (citation and quotations
28

                                   3

omitted); see Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (same).  However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim.  See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973).  "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not substitute its own judgment for that of the [Commissioner]." Reddick, 157 F.3d 715, 720-21 (9th Cir. 1998)(internal citations omitted).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Administration's findings are supported by substantial evidence and are free from material[2] legal error.

**A.   Applicable Law**

"The Social Security Act defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Webb v. Barnhart, 433

---

[2]

The harmless error rule applies to the review of administrative decisions regarding disability.  See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (A decision of the ALJ will not be reversed for errors that are harmless).

4

1   F.3d 683, 686 (9th Cir. 2005) (citing 42 U.S.C. § 423 (d)(1)(A)).  The

2   ALJ follows a five-step, sequential analysis to determine whether a

3   claimant has established disability.  20 C.F.R. § 404.1520.

4

5        At step one, the ALJ determines whether the claimant is engaged in

6   substantial gainful employment activity.  Id. at § 404.1520(a)(4)(I).

7   "Substantial gainful activity" is defined as "work that . . . [i]nvolves

8   doing significant and productive physical or mental duties[] and . . .

9   [i]s done (or intended) for pay or profit."  20 C.F.R. §§ 404.1510,

10  404.1572.  If the ALJ determines that the claimant is not engaged in

11  substantial gainful activity, the ALJ proceeds to step two which

12  requires the ALJ to determine whether the claimant has a medically

13  severe impairment or combination of impairments that significantly

14  limits her ability to do basic work activities.  See 20 C.F.R. §

15  404.1520(a)(4)(ii); see also Webb, 433 F.3d at 686.  The "ability to do

16  basic work activities" is defined as "the abilities and aptitudes

17  necessary to do most jobs." 20 C.F.R. § 404.1521(b).  Webb v. Barnhart,

18  433 F.3d at 686.  An impairment is not severe if it is merely "a slight

19  abnormality (or combination of slight abnormalities) that has no more

20  than a minimal effect on the ability to do basic work activities."  Id.

21  If the ALJ concludes that a claimant lacks a medically severe

22  impairment, the ALJ must find the claimant not to be disabled.  Id.; 20

23  C.F.R. § 1520(a)(ii).  Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir.

24  2005) (ALJ need not consider subsequent steps if there is a finding of

25  "disabled" or "not disabled" at any step).

26

27       However, if the ALJ finds that a claimant's impairment is severe,

28

                                      5

then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements entitling [her] to a disability finding. <u>Webb</u>, 433 F.3d at 686. If the impairment does not satisfy the statutory requirements entitling the claimant to a disability finding, the ALJ proceeds to step four to assess whether the claimant is able to do any work that he or she has done in the past. If the ALJ finds that the claimant is not able to do the type of work that he or she has done in the past, the ALJ proceeds to step five to determine whether there is any other work that the claimant can do and if so, whether there are a significant number of such jobs in the national economy. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999). 20 C.F.R. § 404.1520(a)(4)(iii)-(v). The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. <u>Id.</u>

**B.   Relevant Facts**

### Plaintiff's Testimony

Plaintiff testified that she stopped working as a housekeeping supervisor at a hotel on August 8, 2009 because she purportedly had a nervous breakdown. (A.R. 21, 35) She stated that her mental illness, including depression, anxiety, and schizophrenia, prevented her from working. (A.R. 37, 39). She claimed that her anxiety attacks did not occur "that often," and were "not as bad" as they were initially. (A.R. 39). She stated that she felt depressed every day and described her depression as causing her to "stay in that little dark hole." <u>Id.</u> She

6

also admitted that she thought about suicide, last attempted to commit suicide in 2009, and heard voices "every so often." (A.R. 39-40). She claimed to spend her days laying in bed with the T.V. on, and stated that she was "barely" able to do any housework, could sometimes cook, and do laundry once a week. (A.R. 39-42). When asked if she had any difficulty with her personal care, she testified that she did not bathe for three to four weeks and had to force herself to take a bath. When asked if she was able to change her clothes, she said that she stayed in her pajamas all day. (A.R. 42).

**Dr. Kohut - Treating Psychiatrist**

In his November 2009 letter to the Department of Social Services, Plaintiff's treating psychiatrist, Dr. Kohut, reported that Plaintiff was seen for a psychiatric evaluation on March 31, 2008 and diagnosed with recurrent major depressive disorder, bereavement, social phobia, generalized anxiety disorder, and obsessive compulsive disorder, and that she was seeing a psychotherapist and had been prescribed medication for her condition. (A.R. 237). In a June 2010 letter to the Department of Social Services, Dr. Kohut reported that Plaintiff exhibited symptoms of extreme depression and anxiety, and was continuing to take prescribed medication and be seen for psychiatric follow up and psychotherapy sessions. (A.R. 236). On November 23, 2010, Dr. Kohut signed a form entitled "Medical Opinion Re: Opinion To Do Work Related Activities (Mental)" in which he indicated, by checking boxes, that Plaintiff was "unable to meet competitive standards" or had "no useful ability to function" with respect to the listed "mental abilities and aptitudes

needed to do unskilled work" and, in response to a question asking why his patient would have difficulty working at a regular job on a sustained basis, Dr. Kohut stated that Plaintiff was unable to work due to "severity of anxiety and depression." (A.R. 244-45). Dr. Kohut's treatment notes dated May 16, 2011 reflect that Plaintiff's medication remained unchanged, and treatment notes dated August 8, 2011, reflect that Plaintiff medication was stable. (A.R. 266). On July 28, 2011, Dr. Kohut signed another "Medical Opinion Re: Opinion To Do Work Related Activities (Mental)" form, checking off the same categories of boxes with respect to the listed functions and concluding that Plaintiff was unable to work because she was "unable to adequately care for herself . . . and she struggles to get out of bed on a daily basis. . . . Her paranoia . . . prevent[s] her from interacting [with] people." (A.R. 262-63).

**Deborah Vandenboom - treating Psychotherapist**

Progress notes completed by Plaintiff's treating psychotherapist, Deborah Vandenboom, reflect Plaintiff's complaints and reported symptoms in five sessions, between October 8, 2010 and August 2, 2011, but report Plaintiff's mental status to be within normal limits. (A.R. 249-50; 268-70).

**Dr. Smith - Consultative Psychiatric Examination**

Dr. Smith performed a consultative psychiatric evaluation on January 7, 2010, noting that Plaintiff's chief complaints were

"depression, anxiety, voices, seeing things, demons." (A.R. 186). Plaintiff stated that her depression caused her to want to be left alone, become irritable and snap at other people, yell at people, and throw and break things. (A.R. 186-87).   Dr. Smith made the following observations: (1) Plaintiff claimed that her problems began two years ago with the death of her two sisters, but upon further questioning, clarified that the death of her sisters occurred in 2003 and 2005 (A.R. 186); (2) Although Plaintiff complained of suffering from panic attacks, she "does not describe things that actually sound like panic attacks, and she actually is not very credible when she makes these claims," (A.R. 187); (3) Plaintiff's claimed memory loss was based on the fact that she would forget what she needed when she went shopping, but Plaintiff admitted that she never makes a list to remind her (Id.); (4) Plaintiff was unable to expound on her claim that she saw demons (Id.); (5) Plaintiff's claims regarding previous suicide attempts by trying to cut her wrists were belied by her hesitancy to show Dr. Smith any scars on her wrists and Dr. Smith did not see any marks on Plaintiff's wrists (Id.); (6) Plaintiff denied any suicidal ideation and had never been hospitalized in a psychiatric ward (Id.); (7) Plaintiff did not appear to be compliant with the recommended dosages of medication prescribed to her based on the medication that remained in the bottles that Plaintiff presented and the dates on which these medications had been dispensed (A.R. 187-88); (8) Plaintiff's account of the events that precipitated her departure from her position as a hotel housekeeper was exaggerated, Plaintiff appeared to have an attitude problem, and her supervisors and coworkers may have been behaving appropriately (A.R. 188-89); (9) Plaintiff stated that she was able to do household chores, cook, make

snacks, dress and bathe herself, and  handle cash appropriately (A.R. 189); (10) Plaintiff was neatly groomed and did not appear to be distressed; (11) Plaintiff's eye and interpersonal contact suggested that she was not very credible (A.R. 189); and (12) While Plaintiff was coherent and organized, she could also be "vague and evasive" at times and there "appeared to be quite a lot of exaggeration and manipulation," and she generally "did not appear to be genuine and truthful throughout the interview" (A.R. 189).

Based on her observations, Dr. Smith concluded that Plaintiff did not exhibit bizarre or psychotic thought content and did not appear to harbor suicidal ideation. (A.R. 190).  Although Plaintiff complained of paranoia, Dr. Smith found "no evidence at all of paranoia in the waiting room, in the clinic, or with me today." (A.R. 190). Similarly, Dr. Smith did not find any evidence of hallucination and found that Plaintiff's claims of experiencing hallucinations were not credible. (A.R. 190). There was no "evidence at all of a thought disorder or psychosis" and Plaintiff "did not appear to be responding to internal stimuli." (A.R. 190).  Dr. Smith found Plaintiff's affect to be fairly full, animated, and appropriate to topic, and noted that she "appeared to be of at least average intelligence," and her insight and judgment appeared to be fair. (A.R. 190-91).

> There is no evidence at all of any social phobia, major depression or OCD which was mentioned in the letter I have.[3] There is certainly no evidence of paranoia or any psychotic disorder at all.  She appears probably not compliant with medication and this claim of having vivid visual

---

[3]

Dr. Smith was likely referring to the November 2009 letter by Dr. Kohut, Plaintiff's treating psychiatrist.  See A.R. 186, 237.

1    hallucinations and apparent "psychosis" is not mentioned in
     any of the records, even records from late 2009.  Basically I
2    do not believe she is very credible as a historian and I
     really do not see any objective evidence of her claims and I
3    do not believe she is impaired in her ability to work from a
     psychiatric standpoint.

4

5    (A.R. 191-92).

6

7         Dr. Smith found Plaintiff's psychiatric prognosis to be fair and

8    assessed her with a global assessment of functioning (GAF) score of 80.[4]

9    Thus, Dr. Smith concluded that Plaintiff was not impaired in her ability

10   to (1) understand, remember or complete simple commands or complex

11   commands; (2) interact appropriately with supervisors, coworkers or the

12   public; (3) comply with job rules such as safety and attendance; (4)

13   respond to change in the normal workplace setting; and (5) maintain

14   persistence and pace in a normal workplace setting.  (A.R. 191-92).

15

16   **Dr. Eriks - Consultative Physical Examination**

17

18        On January 12, 2010, a medical consultative examination was

19

20

21   _____

     [4]

22   "The Global Assessment of Functioning Scale is a rating for
     reporting the clinician's judgment of the patient's overall level of
23   functioning and carrying out activities of daily living.  The GAF Score
     is measured on a scale of 0-100, with a higher number associated with
24   higher functioning."  Montalvo v. Barnhart, 457 F.Supp.2d 150 n.5
     (W.D.N.Y. 2006).  A GAF score in the 71-80 range suggests that if
25   symptoms are present, they are "transient and expectable reactions to
     psychosocial stressors (e.g., difficulty concentrating after family
26   argument)" and cause "no more than slight impairment in social,
     occupational or school functioning (e.g., temporarily falling behind in
27   schoolwork)."  Diagnostic and Statistical Manual of Mental Disorders, American
     Psychiatric Association 34 (4th ed. 2000).

28

performed by Dr. Eriks, M.D. (A.R. 198-202).[5]  Plaintiff claimed that she had a history of low back pain which worsens with activities such as lifting standing, or walking for a long period of time, her back pains are relieved by taking medication, and that she currently uses Tylenol for her pain.  Plaintiff told Dr. Eriks that she currently smokes one pack of cigarettes per day and that she stopped drinking alcoholic beverages ten years ago.  (A.R. 194-95).

Dr. Eriks observed Plaintiff to be well-developed, well-nourished and in no apparent distress and found that she had a full range of motion in her shoulders, elbows, wrists and hands, was oriented to person, place and time and able to respond in an appropriate manner and have an appropriate mood.  (A.R. 196-98).  Dr. Eriks concluded that Plaintiff had no restrictions in the "areas of lifting, carrying, standing, walking or sitting,"  (A.R. 198), and did not require any special limitations in those areas or in any  "postural, manipulative, visual, communicative or environmental limitations."  (A.R. 198).

C.  **Analysis**

As set forth below, the ALJ's determination that Plaintiff does not suffer from a severe mental impairment is supported by substantial evidence in the record. First, the ALJ properly found that there was no objective medical evidence to support Plaintiff's allegations of

---

[5]
Since Plaintiff is only challenging the ALJ's finding of a nonsevere mental impairment, it is not necessary to set forth a detailed account of the physical examination.

paranoia and hallucinations.  (A.R. 19).  This finding was supported by Dr. Smith, the psychiatric consultative examiner, who found that Plaintiff's allegations of visual and olfactory hallucinations were not credible (A.R. 190), as well as Plaintiff's treating psychiatrist, Dr. Kohut, who did not diagnose Plaintiff with any psychotic disorder in his treatment records or in his letters to the Department of Social Services. (A.R. 236-37).  Although Plaintiff complained of depression, anxiety, voices, seeing things, and demons, and reported her affect to be solemn, and her mood to be depressed, sometimes angry, and/or sometimes anxious to Dr. Smith, the psychiatric examination that Dr. Smith conducted revealed Plaintiff's affect to be fairly full, animated and appropriate to topic.  Dr. Smith assessed Plaintiff with  a GAF score of 80, which suggests no more than slight difficulty functioning.[6] (A.R. 191).  The ALJ noted that Plaintiff did not consistently report auditory hallucinations to her treating psychotherapist and that no treating or examining doctor had observed Plaintiff to be responding to internal stimuli. (A.R. 22).  In addition, the ALJ observed that during her testimony, Plaintiff responded appropriately to questions and did not appear to be responding to any internal stimuli.  (A.R. 22). Similarly, the ALJ properly determined that there is "no medical evidence of record corroborating a diagnosis of schizophrenia." (A.R. 21).  These findings were also supported by the record which does not contain any evidence or diagnosis of, or treatment for, schizophrenia.

    Second, the ALJ properly found that the only medically determinable mental impairment that Plaintiff suffered from was mood disorder and

---

[6]    See note 4 supra.

anxiety which was "only a slight abnormality" that does "not have more than a minimal effect on [plaintiff's] ability to do basic physical or mental work activities." (A.R. 21). There was substantial evidence to support this finding.

Plaintiff complained of depression, anxiety and schizophrenia. As set forth above, however, there was no medical evidence to support a diagnosis of schizophrenia. Dr. Smith found that Plaintiff was not credible when describing the symptoms of her alleged panic attacks. (A.R. 21, 187). The records produced by Plaintiff's own treating psychiatrist, Dr. Kohut, contained minimal notes that reported the chronic symptoms that Plaintiff complained of but lacked any significant positive objective clinical findings regarding those symptoms. (A.R. 25). Therefore, the ALJ gave little weight to Dr. Kohut's opinion because it was brief, conclusory and inadequately supported by the medical record.[7] The ALJ noted that the forms filled out by Dr. Kohut, in which he checked boxes indicating that Plaintiff was unable to engage

---

[7] A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); see also Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) (treating physician's conclusions "must be given substantial weight"). The ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on "clear and convincing reasons." Lester, 81 F.3d at 830-31. Where such an opinion is contradicted, however, it may only be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." Id. The opinion of a nonexamining physician cannot by itself constitute substantial evidence justifying the rejection of an examining physician's opinion.

14

in, or did not have the useful ability to function in, various mental abilities and aptitudes as a result of her severe anxiety and depression or paranoia, and that her impairment would cause her to miss work more than four days a month (see A.R. 263), did not have any probative value because Dr. Kohut did not provide any medically acceptable clinical or diagnostic findings to support his assessment and instead, appeared to rely heavily on, and accept as true, Plaintiff's claims regarding her symptoms and limitations. (A.R. 26). The ALJ properly determined that Dr. Kohut's reliance on Plaintiff's subjective complaints in forming his assessment of her mental disability was not entitled to great weight because "statements about [a plaintiff's] pain and other symptoms will not alone establish" disability. See 20 C.F.R. § 404.1529(1). In addition, the ALJ noted the infirmities in Plaintiff's own credibility with respect to her self-reporting of her symptoms. Finally, the ALJ found that Dr. Kohut's disability assessment was not only unsupported by any clinical findings or records of treatment, but also inconsistent with his treatment recommendation which did not reflect the presence of symptoms that were sufficiently severe to warrant a disability finding. In that regard, the ALJ pointed out that Dr. Kohut's account of Plaintiff's daily activities was inconsistent with Plaintiff's admitted daily activities and that there was no credible evidence of paranoia or hallucinations. (A.R. 26). Although Dr. Kohut stated that Plaintiff "is unable to adequately care for  herself . . . and she struggles getting out of bed on a daily basis," Plaintiff claimed that she was able to "make sandwiches or microwave food on a daily basis," do "laundry on a weekly basis," can bath[e] herself regularly, had "no problems with personal care, spent approximately two and a half hours

grocery shopping on a biweekly basis, left the house two or three times a day, and talked to her brother on the telephone." (A.R. 158-65).  See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010)(inconsistencies between testimony and self-reported activities and written questionnaires about daily work activities can undermine claimant's credibility).

Because Dr. Kohut's clinical findings do not support his own opinion that Plaintiff's mental impairments rendered her unable to work, the ALJ was not obligated to accept it.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1045 (9th Cir. 2007); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995) (contradicted opinion of a treating physician may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record").

The ALJ gave greater weight to Dr. Smith's opinion that Plaintiff was not impaired because her opinion was supported by the medical findings and consistent with the record as a whole.  (A.R. 26). See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion may constitute substantial evidence when opinion is consistent with independent evidence of record).

Where, as here, the ALJ finds that a claimant suffers from a medically determinable impairment that could reasonably be expected to

produce his or her alleged symptoms, the ALJ must evaluate "the intensity, persistence, and functionally limiting effects of the symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities.  This requires the [ALJ] to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effect." Social Security Ruling ("SSR") 96-7p.

An ALJ's assessment of a claimant's credibility is entitled to "great weight." Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). The ALJ may not discount the claimant's testimony regarding the severity of the symptoms without making "specific, cogent" findings. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); see also Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010) (reaffirming same) but see Smolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1996) (indicating that ALJ must provide "specific, clear and convincing reasons to reject a claimant's testimony where there is no evidence of malingering). see Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).[8]  Generalized, conclusory findings do not suffice.  See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.

---

[8]    In the absence of evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard.  See, e.g., Chaudhry v. Astrue, 688 F.3d 661, 670, 672 n.10 (9th Cir. 2012); Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); Taylor v. Commissioner, 659 F.3d 1228, 1234 (9th Cir. 2011); Valentine v. Commissioner, 574 F.3d 685, 693 (9th Cir. 2009); Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting cases).  As set forth infra, the ALJ's findings in this case are sufficient under either standard, so the distinction between the two standards (if any) is academic.

2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (internal citations and quotations omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); and Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."). See also Social Security Ruling 96-7p.

After considering the record and the testimony presented at the Administrative Hearing, the ALJ made the following credibility finding:

> "the credibility of [Plaintiff]'s allegations regarding the severity of her symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record. The minimal positive objective clinical and diagnostic findings since the alleged onset date detailed below do not support a finding of any severe impairment."

(A.R. 23-24.) As set forth below, the ALJ stated sufficient reasons for deeming Plaintiff's testimony less than fully credible.

First, the ALJ properly noted inconsistencies in Plaintiff's testimony and statements regarding her condition. Plaintiff testified that she stopped working due to a nervous breakdown. However, Dr. Smith found Plaintiff's account of the events that caused her to stop working to be exaggerated and not credible. (A.R. 21, 23). Plaintiff's claims

regarding her alleged disability onset date as being temporally connected to the death of her sisters was also undermined when she revealed that her sisters had been deceased for many years before she stopped working.  (A.R. 186).   Plaintiff also made inconsistent statements regarding her alcohol use.  She told Dr. Smith that she had been arrested in August 2008 for being drunk in public (A.R. 188) but she told Dr. Eriks, the consultative medical examiner, that she had stopped drinking ten years ago.  (A.R. 23, 195).  See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)("The ALJ may consider many factors in weighing a claimant's credibility, including . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less candid").  An ALJ may consider inconsistencies in the claimant's testimony and statements or between the testimony and conduct.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (conflicting information from claimant, including inconsistent statements about prior drug and alcohol use, supported the rejection of the claimant's credibility); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies in claimant's various statements cited as a clear and convincing reason for rejecting the claimant's testimony).

Second, Plaintiff's testimony regarding her daily activities - in which she claimed that she slept with the T.V. on in order to drown out the voices in her head, and claimed that she was barely able to do housework or cook and that she could only do laundry sometimes - was

19

inconsistent with her own functional report and the report submitted by her husband.  Plaintiff indicated that she made sandwiches or used the microwave to cook food for herself and her husband daily, did laundry weekly, bathed regularly and had no problems with personal care, spent two and a half hours shopping for groceries biweekly and left the house two or three times a day.  She also claimed that she relied on her husband to remind her to take her medication but her husband indicated, in his third party report, that Plaintiff did not require any special reminders to take medication. (A.R. 21, 151-52. 159-62).  The extent of a claimant's daily activities can constitute "clear and convincing reasons" for discounting the credibility of a claimant's testimony that the claimant cannot work.  See Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005)(daily activities in caring for own personal needs, cooking, cleaning, and shopping undermined claimant's credibility since those skills could be transferred to the workplace); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (claimant's "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances" was sufficient explanation for rejecting claimant's credibility). [9]

---

[9]

It is difficult to reconcile certain Ninth Circuit opinions discussing when a claimant's daily activities may properly undermine the claimant's credibility.  Compare Stubbs-Danielson v. Astrue, (cited above) with Vertigan v. Halter, 260 F.3d 1044, 1049-50 (9th Cir. 2001)("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability" where these physical activities do not consume "a substantial part of [claimant's] day")(emphasis in original), and Gallant v. Heckler, 753 F.2d 1450, 1453-55 (9th Cir. 1984) (fact that claimant could cook for himself and family members as well as wash dishes did not preclude a finding that claimant was disabled due to
(continued...)

Third, Plaintiff did not appear to be compliant with her medication. (A.R. 22). The ALJ noted that this could indicate Plaintiff's unwillingness to do what is necessary to improve her condition or indicate that her symptoms are not as severe as purported by her and undermine her credibility. (A.R. 22). See Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (AlJ may consider an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment)(citing Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)(conservative treatment can suggest a lower level of both pain and functional limitation, justifying adverse credibility determination).

Fourth, the ALJ noted that, according to Dr. Smith, Plaintiff attempted to exaggerate her symptoms for secondary gain during her psychiatric consultative examination by making fair eye contact, being a strong, positive responder, manipulative and by not being genuine and truthful. (A.R. 22). Dr. Smith pointed out the inconsistencies in Plaintiff's statements regarding the death of her sisters, her suicide attempts, her purported bad memory, her poor effort and that there was

---

[9](...continued)
constant back and leg pain). Because of this difficulty, the Court elects not to rely on the ALJ's finding regarding Plaintiff's daily activities. However, even if the ALJ's partial reliance on Plaintiff's daily activities as a basis for discounting her credibility was improper, the Court nevertheless upholds the credibility determination because the ALJ provided other independent basis for his adverse credibility determination. See Carmickle v. Commissioner, 533 F.3d 1155, 1163 (9th Cir. 2008) (infirmity of one or two supporting reasons for an ALJ's credibility determination does not require overturning the determination if independently valid supporting reasons remain).

no evidence of the paranoia that Plaintiff claimed. Although a claimant's credibility "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor. . . ." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). As set forth above, however, the medical evidence supports the ALJ's finding that Plaintiff's asserted mental limitations were not as disabling as she claimed.

Finally, the ALJ also considered and properly discredited the third party function report completed by Plaintiff's husband, noting that the statements in that report were similar to the Plaintiff's subjective complaints and not credible for the same reasons that Plaintiff's credibility regarding her subjective complaints had been questioned. (A.R. 26-27). The ALJ properly noted that the opinion of a lay person on the severity of a claimant's symptoms is far less persuasive on those issues than the opinion of medical professionals and noted that the statements by Plaintiff's husband were not supported by the clinical or diagnostic medical evidence and not credible to the extent that they were inconsistent with the finding that Plaintiff's mental impairment was not severe. (A.R. 27). The ALJ may reject lay testimony inconsistent with the medical evidence. Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). See Valentine v. Commissioner, 574 F.3d 685, 694 (9th Cir. 2009) (where ALJ provides clear and convincing reasons for rejecting the claimant's own subjective complaints and where lay witness testimony was similar, ALJ also gave germane reasons for rejecting lay witness testimony).

Thus, the ALJ stated sufficient reasons to allow this Court to conclude that the ALJ discounted Plaintiff's credibility on permissible grounds.  The Court therefore defers to the ALJ's credibility determination.  See Lasich v. Astrue, 252 Fed. Appx. 823, 825 (9th Cir. 2007) (court will defer to ALJ's credibility determination when the proper process is used and proper reasons for the decision are provided); accord Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1464 (9th Cir. 1995).  Where the ALJ has made specific findings justifying a decision to disbelieve Plaintiff's symptom allegations and those findings are supported by substantial evidence in the record, "we may not engage in second guessing."  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

**CONCLUSION**

For all of the foregoing reasons, the decision of the Administrative Law Judge is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  June 23, 2014.

/s/
_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE